Marcus Siegel v. Commissioner.
Siegel v. Commissioner
Docket No. 42287.
United States Tax Court
T.C. Memo 1956-28; 1956 Tax Ct. Memo LEXIS 269; 15 T.C.M. (CCH) 129; T.C.M. (RIA) 56028; January 31, 1956
*269 Respondent's determinations of deficiencies sustained on petitioner's failure to show that amounts determined by the respondent as having been received from clients in adoption proceedings were not income, or that any additional expense deductions were allowable. Imposition of additions to tax on account of fraud sustained on showing of omission of substantial amounts of income, and petitioner having been indicted and pleaded guilty to willful evasion of income tax for the same years as involved in this proceeding. Imposition of additions to tax on account of underestimation of income tax sustained. Anthony A. Marcelle, Esq., 30 Broad Street, New York, N. Y., for the petitioner. John J. Madden, Esq., and Richard G. Maloney, Esq., for the *270 respondent. ATKIN
Memorandum Findings of Fact and Opinion ATKIN, Judge: The respondent determined deficiencies in the petitioner's income tax and additions to tax for the years and in the amounts as follows: Sec.
Sec. 293(b) [2]
294(d)(2)
Year
Deficiency [1]
Additions
Additions
1947
$ 249.14
$ 193.36
1948
802.54
1,140.11
$ 124.79
1949
3,582.71
3,004.87
353.99
1950
14,975.43
10,587.68
1,251.07
Totals
$19,609.82
$14,926.02
$1,729.85
The deficiencies result from the respondent's determination that the petitioner failed to include in income fees received from clients represented by the petitioner in proceedings for the adoption of children. Findings of Fact The petitioner is an individual whose residence is in New York, New York. During the years 1947 to 1950, inclusive, the petitioner was a practicing attorney. His original returns were filed with the collector of internal revenue at Brooklyn, New York. *271 In his original returns the petitioner reported receipts, deductions, and net profits from his profession in the following amounts: 1947
1948
1949
1950
Total receipts
$3,495.33
$3,440.02
$3,097.90
$4,443.25
Business deductions
1,044.00
1,032.00
1,032.00
1,140.00
Net profit
$2,451.33
$2,408.02
$2,065.90
$3,303.25
In the taxable years the petitioner engaged in the practice of rendering services to prospective foster parents in the adoption of children. For such activities he received compensation from the adopting parents. The adoption proceedings took place in the Surrogate's Court of Columbia County, New York. The adopting parents were not residents of that county at the time the adoption proceedings were held. Testimony given by the adopting parents in the adoption proceedings as to their residence was given on the advice of the petitioner. The usual procedure in instances of adoption was that couples who desired to adopt a child would communicate with the petitioner by telephone and advise him of their desire. They had not previously been clients of the petitioner. A meeting was then arranged at which the possibility of adoption *272 was discussed and the petitioner questioned the couples on numerous matters, including employment, income, and reasons for wanting to adopt a child. When a child became available for adoption, the petitioner would advise an inquiring couple and arrangements were then made for them to receive the child either at a hospital or at the office of a physician. Following the receipt of the child, adoption proceedings were held in Columbia County, New York, at which the adopting parents were represented by the petitioner. The adopting parents paid the petitioner sums ranging from $600 to at least $2,300. The sums paid to the petitioner were usually paid in two amounts, one at the time the child was received and the balance at the time of the adoption proceedings. The payments were made in cash at the request of the petitioner. In some instances the petitioner told the adopting parents that part of the payments that they made to him was for expenses, such as hospital bills and doctor bills. On July 24, 1951, an agent of the respondent commenced an investigation of the petitioner's income tax returns for the years 1947 to 1950, inclusive. On July 26, 1951, the petitioner filed amended returns *273 for each of those years. In such amended returns the petitioner reported receipts, deductions, and net profit from his profession as a lawyer as follows: 1947
1948
1949
1950
Total receipts
$4,107.33
$9,394.02
$12,277.90
$23,668.25
Business deductions
1,044.00
1,032.00
1,032.00
1,140.00
Net profit
$3,063.33
$8,362.02
$11,245.90
$22,528.25
On the amended returns the petitioner reported gross income, deductions, and net income in the following amounts: Gross income
$5,195.98
$10,429.37
$13,040.75
$20,423.71
Deductions
438.54
751.42
754.20
351.86
Net income
$4,757.44
$ 9,677.95
$12,286.55
$20,071.85
The respondent determined that the petitioner's net income for each of the above years was as follows: 1947
1948
1949
1950
$5,766.11
$12,174.95
$20,764.55
$45,900.85
The amended returns filed by the petitioner did not include all of the amounts that he received from persons whom he represented in adoption proceedings. In 1947 in one instance he had been paid the sum of $600 and in his amended return he included $500 from that source. In 1949 he received a total of $1,300 from *274 one person and reported in the amended return only $150 as having been received from that person. In 1950 he received $1,800 in an adoption matter and did not report any of it. In another instance in 1950 he received $2,300, of which at least $800 was a fee for services, but reported only $250. In another instance $1,850 was received. The petitioner told the adopting parents that $1,000 thereof was for expenses. Petitioner reported in his amended return $800 as income from that transaction. In another instance in 1950 the adopting parents paid out a total of $2,900 in connection with the adoption effected through the petitioner, at least $1,700 of which was paid directly to the petitioner. The adopting parents had been told by petitioner that the fee would be $800 and the expenses $2,100. The petitioner in the amended return reported $800 as his fee in that case. On October 31, 1951, the petitioner was indicted in the Court of General Sessions of the County of New York, on the charge of receiving compensation for the placing out of children contrary to section 487-a of the Penal Law of New York. On March 2, 1954, the petitioner pleaded guilty, and on June 23, 1954, was sentenced *275 to the penitentiary of the City of New York, for the term of one year. On November 1, 1951, the petitioner was indicted in the Supreme Court of the State of New York for the County of Queens, on the charge of unlawfully requesting, receiving, and accepting compensation for placing out a child in 1950 in violation of the provisions of section 487-a of the Penal Law of New York. On November 4, 1954, the petitioner pleaded guilty and on January 6, 1955, was sentenced to the New York penitentiary for an indefinite term to run concurrently with the sentence imposed by the Court of General Sessions on June 23, 1954. On November 2, 1951, the petitioner was indicted in the County Court of Kings County, State of New York, for unlawfully requesting, receiving, and accepting compensation for placing out a child. On May 24, 1954, the petitioner pleaded guilty to the indictment and was given a suspended sentence. On March 11, 1954, the petitioner was indicted in the United States District Court for the Eastern District of New York, on charges of violation of section 145(b) of the Internal Revenue Code of 1939, in willfully and knowingly attempting to defeat and evade a large part of his income *276 tax for the years 1947, 1948, 1949, and 1950 by filing a false and fraudulent income tax return for each of those years. On October 5, 1954, the petitioner pleaded guilty to the charges of knowingly and willfully filing a false and fraudulent income tax return for each of the years 1947, 1948, 1949, and 1950 with intent to defeat and evade income tax for each of those years. On November 18, 1954, the petitioner was sentenced to be imprisoned for a period of six months on each of the four counts, the terms to run concurrently. On January 7, 1955, execution of the sentence was suspended and the petitioner was placed on probation for a period of six months. The petitioner failed to report the correct amount of his income on his original income tax returns for the years 1947, 1948, 1949, and 1950. The petitioner failed to report the correct amount of his income on his amended income tax returns for the years 1947, 1948, 1949, and 1950. Part of the deficiency for each of the years 1947, 1948, 1949, and 1950 was due to fraud with intent to evade tax. The returns filed by the petitioner for the years 1948, 1949, and 1950 show payments on his declarations of estimated tax for those years *277 in the respective amounts of $750, $550, and $450. The tax liability as determined by the respondent for those years was, respectively, $2,829.86, $6,449.89, and $21,311.31. The amount paid by the petitioner as estimated tax was, in each instance, less than 80 per cent of his correct tax liability. Opinion For each of the years before us the respondent determined that the petitioner's income from his profession as a lawyer exceeded the amount that had been reported, which determination resulted in an increase in net income, and deficiencies in income tax. The respondent added a 50 per cent addition for fraud for each year under the provisions of section 293(b) of the 1939 Code, and a 6 per cent addition for underestimation of tax for each of the years 1948, 1949, and 1950 under section 294(d)(2) of the 1939 Code. We do not have the benefit of a brief on behalf of the petitioner and therefore do not know precisely what his position is in the light of the facts developed at the hearing. In the petition filed the petitioner alleges error on the part of the respondent in "increasing net profits from business" for each of the several years, and in the determination of the additions. *278 He further alleges that each of his amended returns "correctly shows a net increase in income from business" for the respective year. The respondent denied the petitioner's allegations and also alleged facts for the purpose of sustaining the additions for fraud, which were duly denied in the petitioner's reply. Deficiencies in Tax From the pleadings and statements by the petitioner's counsel at the hearing, we take it to be the petitioner's position that his amended returns for each of the years 1947 to 1950, inclusive, filed on July 26, 1951, disclosed all of the income that he derived from the practice of his profession, that this cures the inadequacy of the original returns, and that hence there are no deficiencies in tax. The respondent concluded that the amended returns did not contain all the taxable income and determined a deficiency for each year. The record sustains the respondent in this respect. The petitioner's amended returns were prepared by an accountant from figures submitted to him by the petitioner. It was the accountant's understanding that the amounts listed by the petitioner as having been received in adoption proceedings represented gross fees received *279 in such proceedings, and that there was excluded from the lists amounts received by the petitioner which he was to disburse as expenses of the adoption proceedings. He included in the amended returns only the listed amounts. From the opening statement of the petitioner's counsel, we gather that the petitioner claims to have used some part of the sums that he received from adopting parents to pay medical, hospital, and other expenses of the natural mothers of the adopted children. Apparently the petitioner's position is that some part of the sums paid to him by adopting parents should either not be included in gross income, or should be allowed as expense deductions. The evidence adduced is not sufficient to support either treatment. There is evidence that the petitioner advised some of the adopting parents that the proceedings would entail expenses in addition to the petitioner's fee. However, the petitioner did not testify, and the evidence does not establish the amount of such expenses in the various transactions, the extent of the petitioner's liability for them, or that the petitioner ever paid them. There is evidence that in one adoption case an amount of $1,200 went to a *280 doctor, but the amount thereof was $900 less than the adopting parents had been advised by the petitioner that the expenses would be. The $900 difference was paid to the petitioner and he has not hold us what he did with it. He did not include it in his amended return. On the record before us, it cannot be said that there was any form of agency existing between the petitioner and any of the parties in the adoption proceedings which would permit him to exclude from gross income any of the sums that were paid to him by adopting parents. Neither can we find or hold from the record that the petitioner incurred or paid any amounts in such proceedings which could be considered to be ordinary and necessary expenses of his profession. It is too well known to require citation that the allowance of deductions is a matter of legislative grace, and the taxpayer who claims them must clearly establish his right thereto. Counsel for the respondent argues against the allowance of any deductions on the ground of illegality and violation of public policy. In view of our conclusion on other grounds as to the petitioner's failure to establish his right to deductions, it is unnecessary to discuss these *281 reasons advanced by the respondent. In addition to the presumption of the correctness of the respondent's determination of the deficiencies, there is evidence that the petitioner failed to include in the income reported in his returns substantial parts of the sums that he received from several adopting parents. The amounts of the omissions as to which there is evidence are set out in the Findings. Such omissions support the respondent's determination. In view of the foregoing, the respondent's determination of deficiencies is sustained. The 50 Per Cent Addition The evidence sustains the respondent's determination of additions on account of fraud which are imposed "If any part of any deficiency is due to fraud with intent to evade tax * * *." Section 293(b), Internal Revenue Code of 1939. Our Findings disclose the extent of discrepancies between the amounts returned by the petitioner as income in his original returns and the amounts returned in his amended returns, and also the discrepancies between those amounts and the amounts that have been determined to be correct amounts. No explanation has been given for these discrepancies. The existence of omissions as large as these, *282 on the part of an intelligent taxpayer, without tenable explanation, is sufficient to sustain the respondent's burden. Arlette Coat Co., 14 T.C. 751, 756. The respondent's burden is further met by the petitioner's plea of guilty in the criminal proceedings in the United States District Court which involved the same years as are before us. Such pleas are admissions against interest and without explanation as to the circumstances surrounding them, are sufficient to establish fraud with intent to evade tax. Thomas J. McLaughlin. 29 B.T.A. 247; Zella B. Caldwell, 47 B.T.A. 168, affd. on this point, 135 Fed. (2d) 488; Bennett E. Meyers, 21 T.C. 331, 348. The amounts of the additions have been properly computed by the respondent on the difference between the amounts shown on the original returns and the correct amounts of tax, without reduction on account of tax shown in the amended returns. Maitland A. Wilson, 7 T.C. 395, and Aaron Hirschman, 12 T.C. 1223. The 6 Per Cent Addition The respondent has determined that a 6 per cent addition should be added for each of the years 1948, 1949, and *283 1950. That addition is imposed by section 294(d)(2) of the 1939 Revenue Code[3] where 80 per cent of the tax exceeds the estimated tax. The evidence does not show what amounts of tax were shown in the petitioner's declarations of estimated tax. His returns that are in evidence show that he made payments on his declarations for the years 1948, 1949, and 1950 in the respective amounts of $750, $550, and $450. We assume, in the absence of evidence to the contrary, that those are the amounts that he estimated in his declarations. As 80 per cent of the tax for each year, as determined by the respondent and sustained herein, exceeds the amount declared by the petitioner, the 6 per cent addition is applicable. DeWitt M. Sherwood, 20 T.C. 733. Decision will be entered *284 for the respondent. Footnotes
2. Based upon difference between amount of tax determined by the respondent and the amount of tax shown on original returns.↩
1. This takes into account the tax shown on both original and amended returns. ↩
3. SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. * * *
(d) Estimated Tax. - * * *
(2) Substantial Underestimate of Estimated Tax. - If 80 per centum of the tax * * * exceeds the estimated tax, * * * there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax * * * whichever is the lesser.↩